September 26, 1979

## 79-71    MEMORANDUM OPINION FOR THE ASSISTANT TO THE PRESIDENT FOR DOMESTIC AFFAIRS AND POLICY

### Interstate Commerce Commission—Directed Rail Carrier Service—Back Pay—49 U.S.C. § 11125 (Supp. II, 1978)

This confirms my oral advice that it is our opinion that the Interstate Commerce Commission might determine that it was reasonable and necessary for a carrier, providing service over The Rock Island routes pursuant to a directed service order, to pay back wages owing to The Rock Island employees from The Rock Island in order to bring those employees back to work for the directed carrier. We understand that The Rock Island owes, but is presently unable to pay, back wages to its employees for work performed during August. Apparently the employees have taken the position that they will not return to work for a directed carrier or anyone else until back wages have been paid.

Section 11125(b)(3), 49 U.S.C. (Supp. II, 1978) specifically provides that "A directed carrier is not responsible, because of the direction of the Commission, for the debts of the other carrier." Although this provision expressly relieves the directed carrier of any obligation to assume existing debts of the defaulting carrier, in our view it does not preclude a determination that assumption of an existing debt is a permissible means of assuring the resumption or continuation of service.

The provision protects the directed carrier from suits by creditors of the nonoperating carrier; the directed carrier does not become liable for a defaulting carrier's debts by virtue of the Commission's directed service order. The provision, however, does not prohibit the directed carrier from paying an existing debt of the nonoperating carrier if such payment is required to enable the directed carrier to provide the service ordered by the Commission. The language of subsection (b)(3) quoted above is not a limitation on the payment by the directed carrier of the railroad's existing debts. However, the reimbursement provision, subsection (b)(5), is a limitation on such payments.

That subsection requires a finding by the Commission that an expense incurred by the directed carrier was "incurred in or attributable to the handling, routing, and moving the traffic over the lines of the other carrier for the period during which the action of the Commission is effective" before it can be included for reimbursement by the Government. The Commission must find that the payment here was necessary to move traffic over The Rock Island line before it can consider the expenses incurred to be reimbursable.

It is important to note that The Rock Island's financial posture will not be affected by the directed carrier's payment of back wages; the directed carrier simply will be substituted for the several employees as claimants against The Rock Island for the back wages.

The directed carrier would advance the back wages to the employees in return for the employees' assignment to the directed carrier of their individual wage claims against The Rock Island. The directed carrier, as assignee, would then be in a position to recover these payments from the trustee in bankruptcy for The Rock Island. Claims for wages are entitled to priority in a railroad reorganization.

The Commission, in our view, would be entitled to find that the directed carrier's costs associated with advancing the back pay to the employees, and recovering the wage claims from The Rock Island, were necessary and reasonable expenses in the computation of Government reimbursement to the directed carrier under 49 U.S.C. 11125(b)(5) (Supp. II, 1978). Should the directed carrier be unable to recover from The Rock Island the full amount of the back wage payments, the shortfall could also be reasonably included in the directed carrier's expenses, again assuming that the Commission determines that the payment of back wages was a necessary expense "incurred in or attributable to * * * moving the traffic over [The Rock Island] lines" during the period of the directed service order.

It should be pointed out that the Commission in its regulations issued under § 11125 has provided that, in the event a directed carrier does not need all the employees of the nonoperating carrier to provide the directed service, the cost of terminating the unneeded employees is an obligation of the nonoperating carrier and is not the responsibility of the directed carrier. *Ex Parte No. 293* (Sub No. 3), *Implementation of P.L. 93–236,* 248 I.C.C. 251, 273 (1975). These regulations on their face do not foreclose a determination by the Commission that a directed carrier in the exercise of sound business judgment might conclude that the payment of the nonoperating carriers, obligations to employees incurred before the period of directed service was, in fact, necessary to assure the resumption of the ordered service and therefore was attributable to moving traffic over The Rock Island lines.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
